FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 0 2003

at 3 o'clock and __ min __ M.
WALTER A.Y.H. CHINN, CLERK

1 | MARTIN A. CERVANTES
Bar No. 87487
2 | 3535 Inland Empire Boulevard
Ontario, California 91764
3 |
Telephone Number: (909) 941-2525
4 |
Attorney for: Plaintiffs MARTIN VENTRESS and JACK CRAWFORD

CV03 00451 SPK LEK

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV02-9762 NM(SHx)

| | |
|---|---|
| MARTIN VENTRESS and JACK CRAWFORD, | CASE NO: |
| Plaintiffs, | COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL: |
| vs. | (1) VIOLATION OF *LABOR CODE SECTION 1102.5*; |
| JAPAN AIRLINES; JALWAYS CO., LTD; HAWAII AVIATION CONTRACT SERVICES, INC.; and DOES 1 to 10, inclusive, | (2) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; (3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AND (4) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS |
| Defendants. | |

Plaintiffs MARTIN VENTRESS and JACK CRAWFORD ("Plaintiffs") allege:

**THE PARTIES**

1. Defendant JAPAN AIRLINES is a business entity of unknown form with its principal place of business located in Tokyo, Japan.

2. Defendant JALWAYS CO., LTD is a subsidiary of Defendant JAPAN AIRLINES with its principal place of business located in Tokyo, Japan. Defendants JAPAN AIRLINES and JALWAYS CO., LTD will be referred to collectively herein as Defendants JAL.

ENTERED ON ICMS
DEC 3 0 2002

3. Defendant HAWAII AVIATION CONTRACT SERVICES, INC. ("HAWAII"), is a corporation with its principal place of business in Honolulu, Hawaii. Defendant HAWAII provides a service whereby it contracts flight crews to Defendants JAL.

4. Plaintiff MARTIN VENTRESS is a United States citizen currently domiciled in Los Angeles, California.

5. Plaintiff JACK CRAWFORD is a United States citizen currently domiciled in California.

6. Plaintiff does not know the true names of Defendants DOES 1 through 20, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that each of those defendants was in some manner legally responsible for the events and happenings alleged in this complaint and for Plaintiff's damages. The names, capacities and relationships of DOES 1 through 20 will be alleged by amendment to this complaint when they are known.

7. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

## JURISDICTION AND VENUE

8. Jurisdiction is based on diversity of citizenship, 28 U.S.C. Section 1332(a)(3), because the amount in controversy exceeds $75,000.00 and this is an action between citizens of different states and in which citizens or subjects of a foreign state are additional parties.

9. Venue in this judicial district is proper pursuant to 28 U.S.C. Section 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in Los Angeles, California.

## THE FACTS

10. Plaintiff MARTIN VENTRESS began his employment with Defendants JAL and Defendant HAWAII in November of 1992 as DC-10 Flight Engineer.

11. Plaintiff JACK CRAWFORD began his employment with Defendants JAL and Defendant HAWAII in November of 1992 as DC-10 Pilot.

12. On the morning of June 17, 2001, Plaintiffs were "deadhead" passengers on Defendants JAL's flight number 728 from Bangkok, Thailand bound for Osaka, Japan. Prior to the flight, Plaintiff MARTIN VENTRESS spoke with Captain Upgrade Jeff Bicknell, who stated that he was not feeling well. During the flight, Plaintiffs twice witnessed Captain Upgrade Bicknell being carried from the cockpit to the lavatory by Flight Engineer Tony Frieberg. On the final approach for landing Plaintiffs could feel that the aircraft was unstable for landing, and at approximately 100 feet from the ground, the aircraft initiated a "Go-Around". The second attempt to land was also very unstable, and the aircraft was landed hard.

13. After the flight, Plaintiffs spoke with Mr. Bicknell and Mr. Frieberg, and were told that Captain Hanami had allowed Mr. Bicknell, who was obviously incapacitated, to continue to fly the aircraft and attempt to make both landings. Captain Hanami's conduct was in violation of several provisions of Defendants JAL's Operations Manual, Japanese and American Aviation Laws.

14. On June 20, 2001, Plaintiff MARTIN VENTRESS was acting as Flight Engineer on Defendants JAL's flight number JO95 from Honolulu, Hawaii to Hiroshima, Japan with a continuation to Osaka Japan, and Captain Hanami was in charge with Captain Upgrade Bicknell in the "left seat". Once again, Mr. Bicknell expressed to Plaintiff MARTIN VENTRESS that he was not feeling well. Approximately one hour after take-off, Captain Upgrade Bicknell, who was in the "left seat", requested a pillow and blanket relinquished control of the aircraft to Captain Hanami, and proceeded to fall asleep for at least one hour. During the nine hour flight, Captain Upgrade Bicknell did not eat any food and drank a little water, and he fell asleep two more time for at least one hour each time. Plaintiff MARTIN VENTRESS expressed his concern to Captain Hanami, who stated that he felt that Captain Upgrade Bicknell was "just a little tired."

15. On the descent and approach for landing into Hiroshima, Japan, Captain Upgrade Bicknell was at the controls of the aircraft, and he was very lethargic and "behind the power curve" setting up for the approach. Captain Hanami witnessed Captain Upgrade Bicknell make

repeated mistakes with navigational aids and headings, which Plaintiff MARTIN VENTRESS corrected. The landing was extremely hard, and the aircraft came to a stop at the very end of the runway, and only after Plaintiff MARTIN VENTRESS had overridden Captain Upgrade Bicknell's hand on the thrust reversers. Despite these problems, Captain Hanami allowed Captain Upgrade Bicknell to fly the continuation to Osaka, Japan during which Captain Upgrade Bicknell failed to make commands and made another hard landing.

16. After the flight, Plaintiff MARTIN VENTRESS assisted Captain Upgrade Bicknell to a bus where he proceeded to collapse and experience convulsions. Captain Upgrade Bicknell was rushed to the hospital where he was admitted. Plaintiffs eventually learned that Captain Upgrade Bicknell had a cancerous tumor lodged in his brain.

17. On July 24, 2001, Plaintiff JACK CRAWFORD met with Captain Hanami. After the meeting, Plaintiff JACK CRAWFORD wrote Captain Hanami a letter in which he expressed his concerns over Defendants JAL's policy that captains fly aircraft despite being sick. (A true and correct copy of the July 24, 2001 letter is attached hereto as Exhibit "A" and incorporated by reference herein).

18. After July 24, 2001 and until December 26, 2001, Plaintiff JACK CRAWFORD was subjected to a pattern of harassing conduct by Defendants JAL and its employees including, but not limited to, an unprecedented twelve "line monitor" checks, inordinate amounts of oral questions, and homework assignments.

19. On November 20, 2001, Defendants JAL required Plaintiff MARTIN VENTRESS to be examined by Japanese Psychiatrists who deemed him "medically disqualified", although Plaintiff had been declared "fit for duty" by a United States psychiatrist and medical doctor.

20. On December 26, 2001, Plaintiff JACK CRAWFORD was notified by Defendant HAWAII that Defendants JAL had given him an "unsatisfactory grade" of his performance, which "technically voids" Plaintiff JACK CRAWFORD's JCAB type rating, and that thus Defendant HAWAII must "cancel" the assignment to Defendants JAL. (A true and correct copy of the December 26, 2001 letter is attached hereto as Exhibit "B" and incorporated by reference herein).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

21. On December 26 and 28, 2001, Plaintiff MARTIN VENTRESS submitted two Safety Reports to Defendants JAL and HAWAII regarding the June incidents. Plaintiff MARTIN VENTRESS also submitted the two Safety Reports to approximately 25 agencies, including the Federal Aviation Administration ("FAA") and the National Transportation Safety Board ("NTSB"). (True and correct copies of the Safety Reports are attached hereto as Exhibit "C" and incorporated by reference herein).

22. After Plaintiff MARTIN VENTRESS submitted the two Safety Reports, Plaintiff MARTIN VENTRESS was subjected to a pattern of harassing conduct by Defendants JAL and its employees including, but not limited to, questioning Plaintiff MARTIN VENTRESS' mental competency, requiring unnecessary psychiatric evaluations and preventing him from working.

23. On April 12, 2002, Plaintiff MARTIN VENTRESS visited Defendant HAWAII's offices in Honolulu, and noticed his name on a "status board" under the "Termination List". Plaintiff MARTIN VENTRESS has made inquiry as to his status with Defendant HAWAII, who contends that he has not been terminated despite the fact he has not been allowed to fly since September 12, 2001.

## FIRST CAUSE OF ACTION

### (VIOLATION OF *LABOR CODE* SECTION 1102.5 BY PLAINTIFF MARTIN VENTRESS AGAINST DEFENDANTS)

24. Plaintiff MARTIN VENTRESS incorporates by reference paragraphs 1 through 23, inclusive, of this complaint as though set forth fully herein.

25. *Labor Code* Section 1102.5(b) provides:

"No employer shall retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal regulation."

26. *Labor Code* Section 1103 makes a violation of *Labor Code* Section 1102.5 a misdemeanor.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

27. As set forth fully above, during the course of Plaintiff MARTIN VENTRESS' employment with Defendants JAL and HAWAII, Plaintiff MARTIN VENTRESS has reported safety violations to the FAA and NTSB, as well as other agencies. In violation of *Labor Code* Section 1102.5, Defendants JAL and HAWAII have retaliated against Plaintiff MARTIN VENTRESS for making such reports.

28. As a proximate result of Defendants JAL and HAWAII's conduct, Plaintiff MARTIN VENTRESS has suffered and continues to suffer job insecurity, potential job loss, suspension from job, loss of earnings and benefits, humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY BY PLAINTIFF MARTIN VENTRESS AGAINST DEFENDANTS)

29. Plaintiff MARTIN VENTRESS incorporates by reference paragraphs 1 through 23, inclusive, of this complaint as though set forth fully herein.

30. Plaintiff MARTIN VENTRESS has been constructively terminated in that he has not been allowed to work since September 12, 2001 despite being declared "fit for duty", and he saw his name on a "Termination List" on April 12, 2002. This constructive termination constitutes harassment and is in retaliation for Plaintiff MARTIN VENTRESS' safety reports. The constructive termination is in violation of the public policies expressed in *Government Code* Section 12940 (k), *Labor Code* Section 1102.5, 49 U.S.C. Section 40101(d)(1)-(2), and 49 U.S.C. Section 42121.

31. As a direct, foreseeable, and proximate result of Defendants JAL and HAWAII's willful, knowing, and intentional wrongful constructive termination of Plaintiff MARTIN VENTRESS in violation of the public policies of the United States and the State of California, Plaintiff has lost and will continue to lose income and benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage in an amount to be determined at trial, but within the jurisdiction of this Court.

Page 6

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

32. In light of Defendants JAL and HAWAII's knowing, willful, and intentional wrongful constructive termination of Plaintiff MARTIN VENTRESS in violation of public policies, Plaintiff MARTIN VENTRESS seeks an award of punitive and exemplary damages against Defendants JAL and HAWAII in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### (TERMINATION IN VIOLATION OF PUBLIC POLICY BY PLAINTIFF JACK CRAWFORD AGAINST DEFENDANTS)

33. Plaintiff JACK CRAWFORD incorporates by reference paragraphs 1 through 23, inclusive, of this complaint as though set forth fully herein.

34. Plaintiff JACK CRAWFORD was terminated by Defendants JAL and HAWAII on December 26, 2001. This termination constitutes harassment and is in retaliation for Plaintiff JACK CRAWFORD's voicing his concerns regarding Defendant JAL's policy that captains fly aircraft despite being sick. The termination is in violation of the public policies expressed in *Government Code* Sections 12940 (k), 49 U.S.C. Section 40101(d)(1)-(2), and 49 U.S.C. Section 42121.

35. As a direct, foreseeable, and proximate result of Defendants JAL and HAWAII's knowing, willful, and intentional wrongful termination of Plaintiff JACK CRAWFORD in violation of the public policies of the United States and the State of California, Plaintiff has lost and will continue to lose income and benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage in an amount to be determined at trial, but within the jurisdiction of this Court.

36. In light of Defendants JAL and HAWAII's knowing, willful, and intentional wrongful termination of Plaintiff JACK CRAWFORD in violation of public policies, Plaintiff JACK CRAWFORD seeks an award of punitive and exemplary damages against Defendants JAL and HAWAII in an amount according to proof at trial.

///
///
///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## FOURTH CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS PLAINTIFFS AGAINST DEFENDANTS)

37. Plaintiffs incorporate by reference paragraphs 1 through 23, inclusive, of this complaint as though set forth fully herein.

38. The conduct and acts of Defendants JAL and HAWAII more fully described in paragraphs 10-23, of this complaint constitute outrageous conduct by Defendants JAL and HAWAII.

39. Defendants JAL and HAWAII's conduct was intentional and malicious and done for the sole purpose of causing Plaintiffs to suffer humiliation, mental anguish, and emotional and physical distress, and was done with a wanton and reckless disregard of the consequences to Plaintiffs.

40. As a proximate result of the aforementioned acts, Plaintiffs began suffering humiliation, mental anguish, and emotional and physical distress, and have been injured in mind and body, all to Plaintiffs' damage in an amount according to proof.

41. Defendants JAL and HAWAII's conduct was willful, despicable, knowing, and intentional; accordingly, Plaintiffs seek an award of punitive damages in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY PLAINTIFFS AGAINST DEFENDANTS)

42. Plaintiffs incorporate by reference paragraphs 1 through 23, inclusive, of this complaint as though set forth fully herein.

43. Defendants JAL and HAWAII knew, or should have known, that their failure to exercise due care by harassing and terminating Plaintiffs would cause Plaintiffs severe emotional distress.

44. Defendants JAL and HAWAII's actions with regard to Plaintiffs as set forth fully in this complaint constitute a breach of Defendants JAL and HAWAII's duty of due care to Plaintiffs.

45. As a direct and proximate result of Defendants JAL and HAWAII's breach of their duty of due care to Plaintiffs, Plaintiffs have suffered and continue to suffer job insecurity, potential job loss, suspension from job, job loss, and loss of earnings and benefits, all to their damage in an amount to be proven at trial.

46. As a further direct and proximate result of Defendants JAL and HAWAII's unlawful conduct, Plaintiffs have suffered extreme and severe anguish, humiliation, emotional distress, nervousness, tension, anxiety, and depression, the extent of which is not fully known at this time, and the amount of damages is not yet fully ascertained, but will be proven at trial.

WHEREFORE, Plaintiffs pray judgment against Defendants JAL and HAWAII as follows:

1. For compensatory damages, including lost wages and benefits, and emotional distress damages in an amount according to proof;

2. For economic damages, including back pay and future loss of earnings;

3. For general damages for severe emotional distress and mental suffering in an amount according to proof;

4. For prejudgment interest at the legal rate on all damages awarded;

4. For punitive damages on the second, third and fourth causes of action;

5. For attorneys' fees;

6. For costs of suit herein incurred; and

7. For such other and further relief as the Court may deem proper.

Dated: December 23, 2002

Martin A. Cervantes
Attorney for Plaintiffs MARTIN
VENTRESS and JACK CRAWFORD

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL