IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARTIN VENTRESS,                    )    CIVIL NO. 07-00581 LEK
                                    )
          Plaintiff,                )
                                    )
     vs.                            )
                                    )
JAPAN AIRLINES, ET AL.,             )
                                    )
          Defendants.               )
_____     )

**ORDER GRANTING DEFENDANT JAPAN AIRLINES' MOTION
FOR JUDGMENT ON THE PLEADINGS (COMPLETE FEDERAL
PREEMPTION UNDER THE FEDERAL AVIATION ACT)**

        Before the Court is Defendant Japan Airlines'("JAL")

Motion for Judgment on the Pleadings (Complete Federal Preemption

Under the Federal Aviation Act) ("Motion"), filed on June 24,

2011.  Plaintiff Martin Ventress ("Ventress") filed his

memorandum in opposition on September 26, 2011, and JAL filed its

reply on October 3, 2011.  This matter came on for hearing on

October 17, 2011.  Appearing on behalf of JAL were Steven

Egesdal, Esq., and William Hartstad, Esq., and appearing on

behalf of Ventress was Ira Dennis Lawver, Esq.  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, JAL's Motion is HEREBY GRANTED for

the reasons set forth below.

                        **BACKGROUND**

        Ventress and Jack Crawford ("Crawford") originally

filed their Complaint for Damages ("Complaint") on December 30,

2002 in the United States District Court for the Central District
of California.  The defendants were JAL, JALways Co., Ltd.
("JALways"),[1] and Hawaii Aviation Contract Services, Inc.
("HACS", all collectively "Defendants").  The Complaint alleges
the following claims: a claim by Ventress against Defendants for
violation of California Labor Code § 1102.5 ("Count I"); a claim
by Ventress against Defendants for constructive termination in
violation of public policy ("Count II"); a claim by Crawford
against Defendants for termination in violation of public policy
("Count III"); an intentional infliction of emotional distress
("IIED") claim by Ventress and Crawford against Defendants
("Count IV"); and a negligent infliction of emotional distress
("NIED") claim by Ventress and Crawford against Defendants
("Count IV").  All of the claims were based on California law.

On August 20, 2003, the case was transferred to this
district court and assigned the Civil Number 03-00451.  The
parties later stipulated to sever Ventress's claims and
Crawford's claims.  Crawford's claims remain in CV 03-00451.
[Stip. for Complete Severance Under Fed. R. Civ. P. 21 of Pltfs.'
Cases for All Purposes, filed 11/26/07 (dkt. no. 2).]  This
matter has already seen two appeals to the Ninth Circuit.

The relevant factual and procedural background is set

---

[1] The Court will refer to JAL and JALways collectively as
"the JAL Defendants".

forth in the Ninth Circuit's first opinion:

> JAL is a Japanese commercial air carrier based in Tokyo.  HACS, a Hawaii corporation with its principal place of business in Honolulu, provides contract flight crews to JAL.  Ventress and Crawford were employed by HACS to perform services for JAL flights.[2]  Plaintiffs' employment agreements with HACS contain mandatory arbitration provisions.
>
> In December 2002, Ventress and Crawford jointly filed a complaint against JAL and HACS in the Central District of California.  The complaint alleged that JAL required a seriously ill pilot[3] to fly in June 2001, in violation of American and Japanese aviation laws as well as JAL's own operations manual. . . .  In December 2001, . . . Ventress submitted reports on the June incidents to JAL, HACS and aviation regulators.  Ventress claimed repeated harassment from JAL thereafter, including demands to undergo psychiatric evaluations.  Ventress has not been allowed to fly since September 2001. . . .
>
> In July 2003, the California district court granted defendants' motion to transfer the case to the District of Hawaii. . . .  After the venue change, plaintiffs moved to amend the complaint to replace their California law claims with Hawaii law claims.  A magistrate judge denied that motion, and plaintiffs appealed to the Hawaii district court.
>
> In October 2004, the Hawaii district court granted judgment on the pleadings for JAL on the ground that all of plaintiffs' claims were preempted by the Friendship, Commerce, and Navigation Treaty, U.S.-Japan, April 2, 1953, 4 U.S.T. 2063 ("Japan FCN Treaty").  The court further held that the emotional distress claims failed as a matter of California law, even if they were not preempted.  The court declined to rule on plaintiffs' appeal of the denial of leave to amend, saying that the issue was mooted by its

---

[2] Ventress was a flight engineer.  [Complaint at ¶ 10.]

[3] The pilot was Captain Upgrade Jeff Bicknell.  [Complaint at ¶¶ 12-16.]

> decision on treaty preemption. The court then
> severed the claims against HACS and entered a
> stipulation and order staying further proceedings
> pending arbitration. After Ventress and HACS
> disputed the applicable arbitration rules, the
> court entered an order compelling arbitration
> under the commercial rules of the American
> Arbitration Association ("AAA").

Ventress v. Japan Airlines ("Ventress I"), 486 F.3d 1111, 1113-14

(9th Cir. 2007) (footnotes omitted).

In Ventress I, the Ninth Circuit, *inter alia*, reversed

the district court's ruling that the Japan FCN Treaty preempted

California's whistle blower protection laws and remanded for

further proceedings. Id. at 1118. In addition, the Ninth

Circuit dismissed Ventress's appeal of the order compelling him

to arbitrate his claims against HACS, and directed the district

court on remand to consider Ventress's and Crawford's motion to

amend their complaint to state claims under Hawai`i state law.

Id. at 1119.

The relevant history of the case after the Ventress I

remand is set forth in the Ninth Circuit's subsequent opinion.

> In August 2007, Ventress and HACS concluded
> arbitration, resulting in an award that denied
> Ventress's claim for wrongful termination and
> ordered him to pay costs to HACS. On March 20,
> 2008, the district court denied Ventress's motion
> to vacate the award and granted HACS's motion to
> confirm it. Meanwhile, the district court issued
> an order on November 28, 2007, denying Ventress's
> motion to amend the complaint to state claims
> under Hawaii and federal law.
> . . . .
> JAL moved for judgment on the pleadings,
> asserting complete federal preemption by the

4

> Federal Airline Deregulation Act of 1978, 49
> U.S.C. § 41713 ("ADA"), as amended by the
> Whistleblower Protection Program, 49 U.S.C. §
> 42121 ("WPP"). The district court granted that
> motion. The court held that the ADA, as amended
> by the WPP, barred Ventress's state-law whistle
> blowing and public policy claims. Noting that
> this circuit had yet to address ADA preemption of
> state whistle blower protection laws, the district
> court adopted the Eighth Circuit's reasoning that
> "the WPP makes it unmistakable that such claims
> are pre-empted." Botz v. Omni Air Int'l, 286 F.3d
> 488, 498 (8th Cir. 2002).

Ventress v. Japan Airlines ("Ventress II"), 603 F.3d 676, 678-79

(9th Cir. 2010).

In Ventress II, the Ninth Circuit, *inter alia*, affirmed

the confirmation of the arbitration award and the denial of

Ventress's motion to vacate the award, as well as the denial of

the motion to amend. Id. at 680-81. The Ninth Circuit also

noted that the parties had not addressed "whether the protections

announced in the WPP should be categorized as falling within the

broader confines of the Federal Aviation Act of 1958 ('FAA'), 49

U.S.C. § 40103, and whether the FAA preempts Ventress's state-law

claims." Id. at 681 (citing Montalvo v. Spirit Airlines, 508

F.3d 464, 473-74 (9th Cir. 2007) (holding that the FAA and its

corresponding regulations impliedly preempt state laws governing

airline safety)). The Ninth Circuit therefore did not address

the issue, but noted that the district court was free to consider

the issue on remand, if necessary. Id. The Ninth Circuit

reversed the ruling that the ADA, as amended by the WPP,

preempted Ventress's California state law whistle blower claims. Id. at 683.

On May 12, 2010, the JAL Defendants filed a Suggestion of Bankruptcy Regarding Japan Airlines Corporation, Japan Airlines International Co., Ltd., and JAL Capital Co., Ltd. [Dkt. no. 127.]  On May 13, 2010, the district judge issued an order administratively staying the case until further order. [Dkt. no. 128.]

The Ninth Circuit's Mandate was filed in this district court on May 27, 2010.  [Dkt. no. 135.]  On July 6, 2010, the district judge issued an order lifting the stay as to JALways and leaving the stay in effect as to JAL.  [Dkt. no. 141.]

On December 3, 2010, the JAL Defendants filed a Supplemental Corporate Disclosure Statement, stating that, as of December 1, 2010, JAL and JALways merged.  JAL is the surviving entity.  [Dkt. no. 155.]

On March 2, 2011, Ventress filed a Notice of Stipulation and Agreed Order Resolving Motion to Lift Stay in Defendant Japan Airlines' et al. Bankruptcy Proceeding in Order to Continue Case to Trial in the United States District Court for the District of Hawai`i.  [Dkt. no. 162.]  This Court also received a letter dated March 21, 2011 from counsel for JAL stating, *inter alia*, that the bankruptcy stay had been lifted. [Dkt. no. 170.]  This Court held a status conference on April 4,

2011 and issued an Amended Rule 16 Scheduling Order on April 6, 2011. [Dkt. nos. 173, 176.] The instant Motion followed.

## I. **JAL's Motion**

JAL first emphasizes that, prior to <u>Ventress I</u>, the district judge granted JAL's motion to dismiss Count IV (IIED) and Count V (NIED), and no party appealed that ruling. Thus, those claims are no longer before this Court. [Mem. in Supp. of Motion at 2-3 & n.3.] Only Counts I and II remain in this case. [<u>Id.</u> at 4.]

JAL argues that Count I and Count II, based on California law, are preempted by federal aviation law in the FAA and the regulations promulgated thereunder. JAL emphasizes that Ventress has not pled any breach of the applicable federal regulations. [<u>Id.</u> at 10-11.] JAL argues that preemption applies because "the federal government exercises supreme, unitary, and exclusive control" over aviation safety because of the unique nature of the aviation industry. [<u>Id.</u> at 12 (some citations omitted) (quoting <u>Bigstone Broadcasting, Inc., v. Lindbloom</u>, 161 F. Supp. 2d 1009, 1017 (D.S.D. 2001); <u>City of Burbank v. Lockheed Air Terminal, Inc.</u>, 411 U.S. 624, 633-34 (1973)).] JAL argues that FAA regulations on "Medical Standards and Certification", 14 C.F.R. Part 67, preempt the field of Ventress's state law claims in this case. [<u>Id.</u> at 14.]

Further, under Ninth Circuit law, "federal law impliedly preempts state-law aviation safety standards and establishes the standard of care in areas in which the FAA issues 'pervasive regulations.'" [Id. at 17 (citing Martin v. Midwest Express Holdings, Inc., 555 F.3d 806, 811 (9th Cir. 2009); Montalvo, 508 F.3d at 473).] JAL acknowledges that the FAA does not preempt all state law claims; the FAA does not preempt claims in areas where there are no applicable federal regulations. [Id. at 18-19 (citing Martin, 555 F.3d at 810-11).]

Even assuming, for purposes of the Motion, that the factual allegations in support of Ventress's whistle blower claims are true, the state laws he relies upon are preempted by federal air safety regulations. [Id. at 20.] JAL argues that preemption applies because there are pervasive federal regulations governing the medical standards for flight deck officers. [Id. at 21-22 (quoting Schwartz v. Helms, 712 F.2d 633, 635 & nn.3-8 (D.C. Cir. 1983); Abdullah v. Am. Airlines, Inc., 181 F.3d 363, 369 & n.6 (3d Cir. 1999); 14 C.F.R. § 61.3 (1996); 49 U.S.C. § 44703).] The Federal Aviation Administration has established a "Federal Air Surgeon", who is authorized "(i) to perform medical examinations; and (ii) to issue, review, and deny medical certificates, which are required before issuing airman certificates." [Id. at 22 (citing 14 C.F.R. § 67.407(a)).] Further, federal regulations specify the standards

for medical certificates in three different classes. [<u>Id.</u> at 23 (citing 14 C.F.R. Part 67, Subparts B, C, and D).] JAL argues that the pervasiveness of these regulations establishes that Congress intended to occupy the field of medical standards for flight deck officers. Insofar as Ventress has not alleged a violation of federal aviation regulations, his whistle blower claims must fail. [<u>Id.</u> at 24-25.]

JAL also argues that this Court can consider the effect on the aviation industry if a rule allowing the state law claims in this case were applied on a more widespread basis. [<u>Id.</u> at 28-29 (citing <u>French v. Pan Am Express, Inc.</u>, 869 F.2d 1, 6 (1st Cir. 1989); <u>Abdullah</u>, 181 F.3d at 372).] JAL argues that "[a]llowing Ventress's California state law claims to proceed would risk 'fractionalized control' of the 'Medical Standards and Certification' aspect of aviation safety by the Federal Aviation Administration." [<u>Id.</u> at 29.]

JAL therefore urges the Court to grant judgment on the pleadings in its favor as to Counts I and II.

## II.  <u>Ventress's Memorandum in Opposition</u>

Ventress emphasizes that the FAA does not preempt all state law claims. [Mem. in Opp. at 1-3 (citing cases).] Ventress argues that, under <u>Abdullah</u>, although federal regulations preempt ordinary standards of care, state law remedies and claims are still available. [<u>Id.</u> at 3-4 (quoting

Abdullah, 181 F.3d at 368).] Ventress also argues that complete preemption does not apply to the FAA, and therefore it does not preempt his state law claims. Ventress urges the Court to deny the Motion. [Id. at 4-6.]

**III. JAL's Reply**

JAL points out that Ventress does not dispute that his claims involve aviation safety in general, and specifically medical standards for flight deck officers, nor does he dispute that there are pervasive federal regulations on the medical standards for flight deck officers. Further, Ventress did not address the controlling Ninth Circuit authority, including Martin and Montalvo. [Reply at 1.] The only Ninth Circuit case Ventress cited is Charas v. Trans World Airlines, Inc., 160 F.3d 1259 (9th Cir. 1998), which addresses ADA preemption, not FAA preemption. Ventress relies on the statement in Charas that Congress did not preempt "run of the mill personal injury claims", but JAL argues that Montalvo rejected this argument. [Id. at 2.] Further, other district courts within the Ninth Circuit have applied the Martin and Montalvo analysis instead of Charas. [Id. at 3 (citing Johnson v. Northwest Airlines, Inc., 2010 WL 5564629, at *6 (N.D. Cal. May 05, 2010); Brown v. Alaska Air Group, Inc., 2011 WL 2746251, at *3 (E.D. Wash. July 14, 2011)).]

JAL also argues that Ventress's reliance on <u>Abdullah</u> is misplaced.  Although that case allowed a tort claim to go forward, the Third Circuit applied the federal standard of care instead of the state standard of care.  Ventress fails to recognize that <u>Abdullah</u> stands for the proposition that FAA preempts any claims that are not based on the federal standard. JAL argues that federal courts, including the Ninth Circuit in <u>Montalvo</u>, have applied this interpretation of <u>Abdullah</u>.  [<u>Id.</u> at 3-5.]  JAL asserts that "[w]hile states may retain the right to specify what remedies apply, states have no right to provide a cause of action against a commercial airline if no federal law provides a cause of action."  [<u>Id.</u> at 8 (footnotes and emphases omitted).]  JAL acknowledges that, if Ventress had pled that JAL violated a federal aviation regulation, he could have sought a state remedy for the violation.  Ventress, however, did not do so.  [<u>Id.</u> at 9.]

JAL also argues that each of the other cases that Ventress cites from outside of the Ninth Circuit is inapplicable to the present case.  [<u>Id.</u> at 10-15.]  JAL therefore reiterates that Ventress's claims fail as a matter of law and that the Court should grant the Motion.

**STANDARD**

Fed. R. Civ. P. 12(c) states: "After the pleadings are closed--but early enough not to delay trial--a party may move for

judgment on the pleadings."

[T]he standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003). As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996)). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." McGlinchy, 845 F.2d at 810.

As noted, to withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." [Bell Atlantic Corp. v.] Twombly, 550 U.S. [544,] 570 [(2007)]. A claim has "facial plausibility" if "the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [Ashcroft v.] Iqbal, 129 S. Ct. [1937,] 1940 [(2009)]. Although the court must accept all well-pleaded factual allegations as true, "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor must the

court "accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555).

Andrews v. Cnty. of Hawaii, CV. No. 10-00749 DAE-KSC, 2011 WL 4381763, at *2-3 (D. Hawai`i Sept. 20, 2011) (some alterations in Andrews).

## **DISCUSSION**

The sole issue currently before this Court is whether the FAA preempts Ventress's claims. The FAA, 49 U.S.C. § 40103, states, in pertinent part:

> **(a) Sovereignty and public right of transit.-**
> **(1)** The United States Government has exclusive sovereignty of airspace of the United States.
>
> . . . .
>
> **(b) Use of airspace.** . . .
>
> **(2)** The Administrator shall prescribe air traffic regulations on the flight of aircraft (including regulations on safe altitudes) for--
> > **(A)** navigating, protecting, and identifying aircraft;
> > **(B)** protecting individuals and property on the ground;
> > **(C)** using the navigable airspace efficiently; and
> > **(D)** preventing collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects.

"Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, Congressional intent to preempt state law can either be expressed in statutory language or implied from the scheme of federal regulation." Gaeta v. Perrigo Pharm. Co., 630 F.3d 1225,

13

1230 (9th Cir. 2011) (citing <u>Hillsborough Cnty., Fla. v.</u>
<u>Automated Med. Labs., Inc.</u>, 471 U.S. 707, 712-13, 105 S. Ct.
2371, 85 L. Ed. 2d 714 (1985)).  The FAA does not have an express
preemption clause.  <u>Martin ex rel. Heckman v. Midwest Exp.</u>
<u>Holdings, Inc.</u>, 555 F.3d 806, 808 (9th Cir. 2009).  The Court
must therefore look to the two forms of implied preemption: field
preemption and conflict preemption.

> Field preemption occurs when the federal
> regulation is sufficiently comprehensive to leave
> no room for supplementary state regulation.
> [<u>Automated Med. Labs.</u>,] [471 U.S.] at 713, 105 S.
> Ct. 2371.  Conflict preemption, in turn, arises
> when: (1) "'compliance with both federal and state
> regulations is a physical impossibility,'" or (2)
> "state law 'stands as an obstacle to the
> accomplishment and execution of the full purposes
> and objectives of Congress.'"  <u>Id.</u> (citations
> omitted).  The conflict might be with a federal
> statute or an "agency regulation with the force of
> law."  [<u>Wyeth v.] Levine</u>, [555 U.S. 555, 576,] 129
> S. Ct. [1187,] 1200 [(2009)].

<u>Gaeta</u>, 630 F.3d at 1230-31.

In ruling on an airplane manufacturer's argument that
the FAA preempted a passenger's personal injury claim based on
the allegedly defective design of the airplane's stairs, the
Ninth Circuit addressed whether implied field preemption applied.

> The touchstone of preemption is congressional
> intent.  <u>Cipollone v. Liggett Group, Inc.</u>, 505
> U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407
> (1992).  To find field preemption here, we must
> infer that Congress intended to exclude all state
> law personal injury suits from the area of air
> travel, even though it didn't say so.  The FAA
> betrays no such intention.  It expressly preserves
> state remedies, declaring "[a] remedy under this

14

part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). . . .

. . . .

While the FAA did not displace all state tort law touching air travel, neither did it leave states free to impose tort liability on all aspects of airplane operations. Citing "the pervasive nature of the scheme of federal regulation of aircraft noise," <u>City of Burbank v. Lockheed Air Terminal</u>, 411 U.S. 624, 633, 93 S. Ct. 1854, 36 L. Ed. 2d 547 (1973), held that the FAA and the Noise Control Act preempted a noise ordinance prohibiting planes from taking off between 11 p.m. and 7 a.m. Aircraft noise, the Court reasoned, is inextricably linked to the movement of aircraft, which is under exclusive federal control. . . .

Following <u>Burbank</u>, **the circuits have generally analyzed FAA preemption by looking to the pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue**. Claims regarding airspace management, pilot qualifications and failure to warn have been declared preempted. <u>French v. Pan Am. Express, Inc.</u>, 869 F.2d 1 (1st Cir. 1989); <u>Kohr v. Allegheny Airlines, Inc.</u>, 504 F.2d 400 (7th Cir. 1974); <u>Witty v. Delta Air Lines, Inc.</u>, 366 F.3d 380 (5th Cir. 2004). But several defective product claims, such as the claim here, have not. <u>Cleveland v. Piper Aircraft Corp.</u>, 985 F.2d 1438 (10th Cir. 1993); <u>Public Health Trust of Dade County, Fl. v. Lake Aircraft, Inc.</u>, 992 F.2d 291 (11th Cir. 1993). <u>See also</u> <u>Air Transp. Ass'n of Am. v. Cuomo</u>, 520 F.3d 218 (2d Cir. 2008) ("we have acknowledged that the FAA does not preempt all state law tort actions").

<u>Martin</u>, 555 F.3d at 808-09 (some alterations in <u>Martin</u>) (emphasis added).

In the present case, Ventress alleges that he was retaliated against, and constructively terminated, because he submitted safety reports about the two June 2001 flights that Captain Bicknell piloted even though he appeared medically unfit

15

to do so.  The pervasive federal aviation regulations do not contain regulations prohibiting employment discrimination and retaliation, and JAL recognizes that the FAA does not preempt all retaliation claims.  See, e.g., Aloha Islandair Inc. v. Tseu, 128 F.3d 1301, 1303 (9th Cir. 1997) ("we see no congressional purpose that would be served by denying to FAA-certified pilots, in the name of preemption, the protection of Hawaii's law from employment discrimination based on physical disability" (citation omitted)).  JAL argues that FAA preemption applies because ruling on Ventress's claims would require the finder of fact to determine whether or not Captain Bicknell was medically fit to fly.  This would intrude upon the extensive federal regulations about air safety in general, and the medical qualifications of flight crews in particular.  JAL emphasizes that Ventress has not alleged any violations of the federal standards.  The Ninth Circuit's in discussion in Martin of Montalvo and Charas, however, appears to preclude JAL's argument for a broad interpretation of the FAA that preempts all claims related to aviation safety unless the claim alleges a violation of a federal regulation.

> **[T]he manufacturer argues that the FAA preempts all personal injury claims by airline passengers, except claims based on violations of specific federal regulations.  However, this argument conflicts with the second part of Montalvo,** which considered a claim that the seating configuration was too cramped, putting passengers at risk of blood clots.  [508 F.3d] at 474.  The passengers

16

didn't allege that the seating violated a federal regulation, id.; see 14 C.F.R. § 23.785, and yet we didn't hold that the FAA preempted the claim, which would follow from a broad reading of the first section.  Indeed, we didn't consider FAA preemption at all.  Instead, we reversed the district court's holding that the Airline Deregulation Act preempted the claim and remanded for consideration whether providing roomier seating would significantly affect ticket prices or competition between airlines-a required element for ADA preemption.  508 F.3d at 475.

In a third claim, the Montalvo plaintiffs alleged that the airplane seats were defectively designed.  The district court held that the FAA impliedly preempted the claim because seat designs were pervasively regulated, noting that "the FAA Administrator has enacted a wealth of federal regulations governing the design, maintenance, structure and position of aircraft seats."  In re Deep Vein Thrombosis Litig., 2005 WL 591241 at *14 (N.D. Cal. 2005).  The plaintiffs did not appeal that holding.  Our analysis of Montalvo does not depend . . . on any analogy between the seating design and configuration claims.  Rather, it springs from Montalvo's different treatment of the seating configuration and failure to warn claims. If Montalvo had held that the FAA preempts all state law personal injury claims, it would have been unnecessary to reverse the district court's dismissal of the seating configuration claim and remand for further consideration of ADA preemption.

Furthermore, **the manufacturer's broad reading of Montalvo, precluding any claim not based on a violation of a specific federal regulation, is in tension with our en banc decision in Charas.** Charas considered several state law personal injury claims based on aircrews' negligent actions, such as leaving luggage in the aisles and hitting passengers with the beverage cart.  Id. at 1261.  Charas even considered a claim similar to the one here, that the aircrew negligently allowed a passenger to fall from a stairway with only one handrail.  Id. at 1261-62.  That passenger also brought the exact claim at issue here, that the stair design was defective, but the district court held that the claim was not preempted and the

airline did not appeal.  Id.  Reading the ADA's
preemption provision narrowly, we overruled
several district courts, and two of our own
decisions, and held that Congress "did not intend
to preempt passengers' run-of-the-mill personal
injury claims," drawing no distinction between
state remedies and state standards of care.  Id.
at 1261, 1265.  Although Charas did not consider
FAA preemption, it reversed several district court
and panel decisions for interpreting ADA
preemption too broadly.  This holding would be
moot if all the claims at issue were preempted
anyway by the FAA.

Id. at 810-11 (emphases added) (some citations omitted).

It is undisputed that there are pervasive federal

regulations governing the medical standards applicable to

airmen.[4]  See 14 C.F.R. Chapter I, Subchapter D., Part 67.  This

Court cannot conclude, in the context of judgment on the

pleadings, that considering Ventress's claims would necessarily

require this Court to intrude into the area of the medical

standards for airmen, which Congress clearly intended that

federal law would occupy exclusively.  Based on the pleadings

alone, this Court cannot conclude that ruling on Ventress's

claims would require it to determine whether Captain Bicknell was

or was not medically fit to pilot the two June 2001 flights in

question.  In order to determine whether ruling on the merits of

Ventress's claims requires consideration of Captain Bicknell's

---

[4] The term "airmen" includes: "Pilots, Flight Instructors,
and Ground Instructors"; 14 C.F.R. Chapter I, Subchapter D., Part
61; "Flight Crewmembers Other Than Pilots"; id., Part 63; and
others; id., Part 65.

medical fitness, this Court must consider the facts supporting

both Ventress's claims and JAL's defenses.  Such a fact-specific

inquiry is not possible at the judgment on the pleadings stage.

The Court's preemption inquiry, however, does not end

there.  The Complaint alleges, in pertinent part:

> 19.  On November 20, 2001, Defendants JAL
> required Plaintiff MARTIN VENTRESS to be examined
> by Japanese Psychiatrists who deemed him
> "medically disqualified", although Plaintiff had
> been declared "fit for duty" by a United States
> psychiatrist and medical doctor.
> . . . .
> 21.  On December 26 and 28, 2001, Plaintiff
> MARTIN VENTRESS submitted two Safety Reports to
> Defendants JAL and [HACS] regarding the June
> incidents.  Plaintiff MARTIN VENTRESS also
> submitted the two Safety Reports to approximately
> 25 agencies, including the Federal Aviation
> Administration . . . .
> 22.  After Plaintiff MARTIN VENTRESS
> submitted the two Safety Reports, Plaintiff MARTIN
> VENTRESS was subjected to a pattern of harassing
> conduct by Defendants JAL and its employees
> including, but not limited to, questioning
> Plaintiff MARTIN VENTRESS' mental competency,
> requiring unnecessary psychiatric evaluations and
> preventing him from working.
> 23.  On April 12, 2002, Plaintiff MARTIN
> VENTRESS visited Defendant [HACS]'s offices in
> Honolulu, and noticed his name on a "status board"
> under the "Termination List". . . .

[Complaint at pgs. 4-5.]  The Complaint also alleges that

Ventress was employed by both the JAL Defendants and HACS.  [Id.

at ¶ 27.]  The JAL Defendants admitted, in response to paragraph

19 of the Complaint, that Japanese psychiatrists from JAL's

Medical Services Department examined Ventress.  [CV 03-00451,

Japan Airlines and JALways Co., Ltd.'s Answer to Complaint

("Answer"), filed 9/9/03 (dkt. no. 26), at ¶ 15.] In considering
the instant Motion, this Court must accept the material factual
allegations of the Complaint as true. See Andrews v. Cnty. of
Hawaii, CV. No. 10-00749 DAE-KSC, 2011 WL 4381763, at *2 (D.
Hawai`i Sept. 20, 2011) (quoting McGlinchy v. Shell Chemical Co.,
845 F.3d 802, 810 (9th Cir. 1988)).

In essence, the Complaint alleges that, in response to
Ventress's reports about the June 2001 incidents, the JAL
Defendants retaliated against him by subjecting him to
psychiatric evaluations questioning his mental competency to work
and by constructively terminating him. One of JAL's defenses is
that, even assuming *arguendo*, that Ventress was its employee, its
"actions with respect to [Ventress] were based on legitimate,
non-discriminatory business reasons." [CV 03-00451, Answer at ¶
33.] In order to rule on Ventress's retaliation claims, the
finder of fact will have to determine whether JAL had "a
legitimate, nonretaliatory explanation for its acts" or whether
its "explanation is merely a pretext for retaliation." See
Mokler v. Cnty. of Orange, 68 Cal. Rptr. 3d 568, 580 (App. Dist.
2007) (citations omitted). That inquiry will require the finder
of fact to consider whether or not Ventress was medically fit to
carry out his duties as a flight engineer. A flight engineer is
an airman under FAA regulations. 14 C.F.R., Subchapter D.
(Airmen), Part 63 (Certification: Flight Crewmembers Other Than

20

Pilots), Subpart B. (Flight Engineers). Determining whether Ventress was medically qualified to work as a flight engineer would intrude in the area of airmen medical standards, which Congress intended to occupy exclusively. Cf. Martin, 555 F.3d at 809 ("**Claims regarding** airspace management, **pilot qualifications** and failure to warn **have been declared preempted**." (emphases added) (citing French v. Pan Am. Express, Inc., 869 F.2d 1 (1st Cir. 1989); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974); Witty v. Delta Air Lines, Inc., 366 F.3d 380 (5th Cir. 2004))). The Court therefore CONCLUDES that the FAA preempts Counts I and II, the only claims remaining in Ventress's Complaint.

## CONCLUSION

On the basis of the foregoing, JAL's Motion for Judgment on the Pleadings (Complete Federal Preemption Under the Federal Aviation Act), filed June 24, 2011, is HEREBY GRANTED.

The Court also notes that JAL's Motion for Summary Judgment or in the Alternative Judgment on the Pleadings (Counts 1 and 2) and Motion for Summary Judgment that Defendant Jalways Co., Ltd. Was Not Plaintiff's Employer (Counts 1-2) (collectively "Motions for Summary Judgment"), filed June 24, 2011, are currently set for hearing on December 12, 2011. In light of this Court's ruling on JAL's Motion for Judgment on the Pleadings, JAL's Motions for Summary Judgment are HEREBY DENIED AS MOOT.

The hearing on the Motions for Summary Judgment is HEREBY
VACATED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 28, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARTIN VENTRESS V. JAPAN AIRLINES, ET AL**; CIVIL NO. 07-00581 LEK;
ORDER GRANTING DEFENDANT JAPAN AIRLINES' MOTION FOR JUDGMENT ON
THE PLEADINGS (COMPLETE FEDERAL PREEMPTION UNDER THE FEDERAL
AVIATION ACT)