IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTIN VENTRESS, ) | CIVIL NO. 07-00581 LEK-RLP |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAPAN AIRLINES, ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

On October 31, 2011, this Court issued its Order Granting Defendant Japan Airlines' Motion for Judgment on the Pleadings (Complete Federal Preemption Under the Federal Aviation Act) ("10/31/11 Order").[1]  Before the Court is Plaintiff Martin Ventress's ("Ventress") Motion for Reconsideration, filed on November 10, 2011, seeking reconsideration of 10/31/11 Order.  Defendant Japan Airlines ("JAL") filed its memorandum in opposition on November 28, 2011, and Ventress filed his reply on December 15, 2011.  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  After careful consideration of the Motion for Reconsideration, supporting and opposing memoranda, and the relevant legal authority, Ventress's

---

[1] The 10/31/11 Order is available at 2011 WL 5190849.

Motion for Reconsideration is HEREBY DENIED for the reasons set forth below.

## BACKGROUND

The parties and the Court are familiar with the factual and procedural background of this case. The Court therefore will only address the background that is relevant to the Motion for Reconsideration.

On June 24, 2011, JAL filed, *inter alia*, its: Motion for Summary Judgment or in the Alternative Judgment on the Pleadings (Counts 1 and 2) ("Merits Motion") [dkt. no. 177]; Motion for Summary Judgment that Defendant JALways Co., Ltd. Was Not Plaintiff's Employer (Counts 1-2) ("Employer Motion") [dkt. no. 179]; and Motion for Judgment on the Pleadings (Complete Federal Preemption Under the Federal Aviation Act) ("Preemption Motion") [dkt. no. 181]. The motions were set for hearing on October 17, 2011. At the hearing, however, this Court continued the hearing on the Merits Motion and the Employer Motion. [Minutes, filed 10/17/11 (dkt. no. 195).] The hearing on the Preemption Motion went forward as scheduled, and the Court ultimately granted the Preemption Motion in the 10/31/11 Order, rendering the Merits Motion and the Employer Motion moot.

In the 10/31/11 Order, this Court stated that the sole issue in the Preemption Motion was "whether the [Federal Aviation Act of 1958 ('FAA')] preempts Ventress's claims." 2011 WL

2

5190849, at *6.  The Court ultimately ruled that:

> In order to rule on Ventress's retaliation claims, the finder of fact will have to determine whether JAL had "a legitimate, nonretaliatory explanation for its acts" or whether its "explanation is merely a pretext for retaliation."  See Mokler v. Cnty. of Orange, 68 Cal. Rptr. 3d 568, 580 (App. Dist. 2007) (citations omitted).  That inquiry will require the finder of fact to consider whether or not Ventress was medically fit to carry out his duties as a flight engineer.  A flight engineer is an airman under FAA regulations.  14 C.F.R., Subchapter D. (Airmen), Part 63 (Certification: Flight Crewmembers Other Than Pilots), Subpart B. (Flight Engineers).  Determining whether Ventress was medically qualified to work as a flight engineer would intrude in the area of airmen medical standards, which Congress intended to occupy exclusively.  Cf. Martin [ex rel. Heckman v. Midwest Express Holdings, Inc.], 555 F.3d [806,] 811 [(9th Cir. 2009)] ("**Claims regarding** airspace management, **pilot qualifications** and failure to warn **have been declared preempted**." (emphases added) (citing French v. Pan Am. Express, Inc., 869 F.2d 1 (1st Cir. 1989); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974); Witty v. Delta Air Lines, Inc., 366 F.3d 380 (5th Cir. 2004))).  The Court therefore CONCLUDES that the FAA preempts Counts I and II, the only claims remaining in Ventress's Complaint.

Id. at *10.  The instant Motion for Reconsideration followed.

## **DISCUSSION**

"[A] successful motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  Donaldson v. Liberty Mut. Ins.

3

Co., 947 F. Supp. 429, 430 (D. Hawai`i 1996); accord Tom v. GMAC Mortg., LLC, CIV. NO. 10-00653 SOM/BMK, 2011 WL 2712958, at *1 (D. Hawai`i July 12, 2011) (citations omitted).  This district court recognizes three grounds for granting reconsideration of an order: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Hawai`i 2006) (citing Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178-79 (9th Cir. 1998)). "Mere disagreement with a previous order is an insufficient basis for reconsideration." Id.  "Whether or not to grant reconsideration[,]" however, "is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).

I.    **Documents and Arguments Not Considered**

The Court first notes that Ventress attached three exhibits to the Motion for Reconsideration: Ventress's Pilot Contract and Letter of Acknowledgment of the Pilot Contract; Appendices to the Pilot Contract; and a letter dated October 6, 2004 to Ventress from Pamela Steele-Nelson of the United States Department of Transportation.  JAL objects that Ventress's exhibits are not authenticated.  [Mem. in Opp. at 1.]  Ventress

also attached eight exhibits to his reply.  The Court assumes that JAL would raise the same objections to the reply exhibits as it did to the exhibits attached to the Motion for Reconsideration.

The Court need not address JAL's objections to the exhibits because, even if the exhibits were properly authenticated, the Court would not consider them.  Ventress asks this Court to reconsider its decision to grant JAL judgment on the pleadings.  It is well settled that a court considering a motion for judgment on the pleadings is limited to the material in the pleadings, and the consideration of evidence outside of the pleadings converts the motion for judgment on the pleadings to a motion for summary judgment.  <u>Yakima Valley Memorial Hosp. v. Wash. State Dep't of Health</u>, 654 F.3d 919, 925 n.6 (9th Cir. 2011).  Whether to convert the underlying motion for judgment on the pleadings to a motion for summary judgment is within this Court's discretion, <u>see</u> <u>id.</u>, and this Court declines to consider evidence outside of the pleadings in connection with Ventress's motion to reconsider the ruling on the Preemption Motion. Ventress also apparently argues that JAL itself invoked summary judgment standards in the Preemption Motion and therefore the Court should allow him to rely on information outside of the pleadings.  Ventress's argument is misplaced.  Neither the Preemption Motion nor the 10/31/11 Order invoked Fed. R. Civ. P.

5

56 summary judgment standards; both are based the standard for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The Court therefore will not consider the exhibits that Ventress submitted with his Motion for Reconsideration and his reply.

Second, the Court notes that Ventress devotes a significant portion of the Motion for Reconsideration and his reply to argument on the issues: 1) whether JAL and Defendant JALways, Co., Ltd. ("JALways"), and not Defendant Hawaii Aviation Contract Services, Inc. ("HACS"), were his actual employer; and 2) whether the medical reason for his termination was either pretextual or fraudulent.  JAL sought a summary judgment ruling the issue of whether JAL/JALways was Ventress's employer in the Employer Motion.  Neither the Preemption Motion nor the 10/31/11 Order addressed this issue; the Court only ruled that the Employer Motion was rendered moot because the Court granted the Preemption Motion.  This Court therefore will not consider Ventress's arguments on the issue whether JAL/JALways was his employer.

As to the issue whether the medical reason for Ventress's termination was pretextual or fraudulent, the 10/31/11 Order did not address the merits of that issue.  This Court merely recognized that, in order to ultimately rule on the merits of Ventress's retaliation claim, the finder of fact would have to consider Ventress's claim of pretext and/or fraud.  This Court

did conclude that the FAA preempted Ventress's state law claims because ruling on the pretext/fraud issue would implicate federal medical standards for airmen, but in making this ruling this Court made no findings and expressed no inclinations about the merits of Ventress's pretext/fraud argument.  This Court therefore will not consider Ventress's arguments on the issue whether the medical reason for his termination was pretextual or fraudulent.

**II.  Whether the FAA Applies**

In the Motion for Reconsideration, Ventress asserts that the FAA "applies to the United States airline industry and the use of United States airspace by both military and civilian aircraft; and not intended for, or imposed on foreign air carriers."  [Motion for Reconsideration at 2 (citations omitted).]  Arguably, this argument is not properly before the Court because the Court generally will not grant reconsideration based on legal arguments that the party seeking reconsideration could have raised in connection with the original motion.  See Hawaii Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269-70 (D. Hawai`i 2005) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)) (some citations omitted).

In his memorandum in opposition to the Preemption Motion, Ventress primarily argued that the "the FAA does not

completely preempt state law causes of action." [Dkt. no. 190 at 1.]  Ventress also noted that some circuits have held that, in spite of ordinary FAA preemption of state standards of care, state law remedies and causes of action remain available, and he emphasized that the United States Supreme Court has recognized very few statutes which trigger complete preemption. [Id. at 4-5.]  No where in his opposition to the Preemption Motion did Ventress argue that the FAA did not apply because JAL is a foreign air carrier.  Further, Ventress neither raised this issue at the hearing on the Preemption Motion nor requested supplemental briefing to address this issue.  Although this Court arguably need not address this issue because of Ventress's failure to raise it in connection with the original Preemption Motion, the Court will address it because the 10/31/11 Order does implicitly conclude that the FAA applies in the instant case.

Ventress argues that, based on 49 U.S.C. § 40103, the FAA only applies to the use of United States airspace.  He contends that

> the incidents that gave rise to Ventress'
> complaints, simply did not occur within the
> territory of the United States, which terminates
> twelve (12) miles off shore of its geographical
> territory.  In Ventress' Safety Reports(s)
> regarding pilot Jeff Bicknell's illness, the
> incidents that gave rise to Ventress' complaint,
> began on the flight from Thailand to Japan in June
> 2001.  A few days later, in Hawaii, Ventress
> warned JAL Captain Hanami of Bicknell's
> deteriorating health.  After taking-off from
> Honolulu International airport, and more than

>           twelve miles off shore from the State of Hawaii
>           (USA) on JAL flight 95 to Hiroshima, Japan,
>           Bicknell collapsed at the flight controls.

[Reply at 4-5.]

First, the factual premise of Ventress's argument is faulty.  The basis of Ventress's claim is the **retaliation** that he allegedly experienced because he expressed concerns about Captain Bicknell flying while incapacitated during two June 2001 flights and because Ventress submitted internal and agency reports about the incidents.  Ventress has not alleged that this retaliation occurred on those June 2001 flights while in international airspace.  Ventress's Complaint alleges, *inter alia*, "On April 12, 2002, Plaintiff MARTIN VENTRESS visited Defendant [HACS]'s offices in Honolulu, and noticed his name on a 'status board' under the 'Termination List'."  [Complaint at ¶ 23.]

Ventress also argues that the FAA "was not intended for, or imposed on foreign air carriers" and was not "meant to police the rest of the world's airspace."  [Mem. in Supp. of Motion for Reconsideration at 4-5.]  Ventress bases his position on the FAA's definition of "air carrier" and "airman".  [Id.] The FAA defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation."  49 U.S.C. § 40102(a)(2).  An "airman" is

>           an individual--
>                (A) in command, or as pilot, mechanic, or

>              member of the crew, who navigates aircraft
>              when under way;
>              (B) except to the extent the Administrator of
>              the Federal Aviation Administration may
>              provide otherwise for individuals employed
>              outside the United States, who is directly in
>              charge of inspecting, maintaining,
>              overhauling, or repairing aircraft, aircraft
>              engines, propellers, or appliances; or
>              (C) who serves as an aircraft dispatcher or
>              air traffic control-tower operator.

§ 40102(a)(8).

First, the definition of "airmen" does not render the FAA inapplicable to foreign air carriers. Subsection 40102(a)(2)(B) merely gives the Administrator of the Federal Aviation Administration the discretion over the determination of airman status for persons whose work falls within that category but who are employed outside of the United States. Further, 49 U.S.C. § 44703, governing airman certificates, suggests that Congress contemplated the issuance of airman certificates to employees of foreign air carriers. See 49 U.S.C. § 44703(e) (regarding airman certificates for an alien). The Administrator of the Federal Aviation Administration also has the discretion to exempt "foreign aircraft and airmen serving on the aircraft" from certain prohibitions regarding safety, including the prohibition against serving as "an airman with respect to a civil aircraft, aircraft engine, propeller, or appliance used, or intended for

use, in air commerce"[2] without the appropriate airman certificate.  49 U.S.C. § 44711(a)(2)(A), (b).  This discretion to grant an exemption implies that: 1) persons serving on foreign aircraft can be "airmen"; and 2) the general rule is that the prohibitions apply to airmen serving on foreign aircraft.

As to the definition of "air carrier", the Ninth Circuit has held that "the [Airline Deregulation Act's ("ADA")] preemption of state regulation covers regulation of all air carriers, whether domestic or foreign."  <u>In re Korean Air Lines Co.</u>, 642 F.3d 685, 696 (9th Cir. 2011).  In so holding, the Ninth Circuit noted:

> An examination of the FAA shows that Congress's use of the term "air carrier" throughout the Act does not always correspond with that term's statutory definition and that "air carrier" is sometimes used to refer generally to both domestic and foreign airlines. For example, 49 U.S.C. § 44901(i) refers to "an air carrier providing air transportation under a certificate . . . or a permit."  Only a domestic "air carrier" provides air transportation under a certificate, and only a "foreign air carrier" provides air transportation under a permit.  <u>See id.</u> §§ 41102, 41302.  Thus, the term "air carrier" in this context refers to

---

[2] "Air commerce" includes "foreign air commerce", 49 U.S.C. § 40102(a)(3), and
> "foreign air commerce" means the transportation of passengers or property by aircraft for compensation, the transportation of mail by aircraft, or the operation of aircraft in furthering a business or vocation, between a place in the United States and a place outside the United States when any part of the transportation or operation is by aircraft."

§ 40102(a)(22).

>           both a domestic "air carrier" and a "foreign air
>           carrier."  Also, 49 U.S.C. § 44940(a)(2)(B)(ii)
>           refers to "an air carrier described in
>           subparagraph (A)," which in turn covers both "air
>           carriers and foreign air carriers," see id. §
>           44940(a)(2)(A).  Likewise, many of the FAA's
>           subsections contain only the term "air carrier" in
>           their titles even though their content plainly
>           regulates both domestic and foreign operators.
>           See id. § 40129(f) (subsection entitled
>           "Eligibility of air carriers" refers to "air
>           carrier[s]" and "foreign air carrier[s]"
>           participating in collaborative decisionmaking
>           pilot programs); id. § 44940(a)(2) (subsection
>           entitled "Air carrier fees" authorizes the
>           Secretary of Transportation to impose certain fees
>           on "air carriers and foreign air carriers"); see
>           also Carter v. United States, 530 U.S. 255, 267,
>           120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000) (noting
>           that title of statute may be of use when it sheds
>           light on an ambiguous phrase).  Congress's
>           occasional use of the term "air carrier" to
>           include "foreign air carrier" counsels strongly
>           that the meaning of "air carrier" is ambiguous in
>           the ADA's statutory preemption provision.

Id. at 692 (alterations in Korean Air).  Thus, the Ninth Circuit has recognized that the term "air carrier" is ambiguous in the FAA.  In interpreting the term "air carrier" in the ADA preemption provision, the Ninth Circuit considered the context of the term.  Id. at 692-93 ("'Once it is established that [a statutorily defined term has different meanings in different sections], the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute.'" (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 343-44, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)) (alteration in

Korean Air)).  The Ninth Circuit stated:

> the context in which the term appears in the preemption provision indicates that Congress intended that it apply to all air carriers and not only to domestic carriers.  The preemption provision prohibits state regulation of "an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).  The use of the modifying phrase "that may provide air transportation under this subpart" indicates that the term "air carrier" is defined in a particular way in this provision.  See, e.g., Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 834 (9th Cir. 1996) ("We have long followed the principle that [s]tatutes should not be construed to make surplusage of any provision." (internal quotation marks omitted) (alteration in original)).  Because the subpart to which the phrase refers, entitled "Economic Regulation," has provisions regulating both domestic and foreign air carriers, a sensible reading of the preemption provision implies that "air carrier" was intended to have its broader and ordinary meaning in this section of the statute. See 49 U.S.C. § 41101 et seq., Subtitle VII, Part A, Subpart II.

Id. at 693 (footnote omitted).

Although Korean Air is not directly on point because it dealt specifically with ADA preemption, which is not at issue in the instant case, Korean Air and other cases addressing ADA preemption are relevant to the extent that they address other provisions of the FAA.  The analysis of those FAA provisions provides guidance to this Court's analysis of the FAA provisions at issue in this case.  As this Court previously noted in the 10/31/11 Order, the FAA does not have an express preemption clause.  Ventress, 2011 WL 5190849, at *6 (citing Heckman v. Midwest Exp. Holdings, Inc., 555 F.3d 806, 808 (9th Cir. 2009)).

13

The Court therefore looks to the context of the FAA's provisions governing medical standards for airmen to determine the term "air carrier" has the narrow definition stated in § 40102(a)(2) or "its broader and ordinary meaning" encompassing domestic air carriers and foreign air carriers.  See Korean Air, 642 F.3d at 693.  The Federal Aviation Administration's pervasive regulations governing the medical standards applicable to airmen are contained in 14 C.F.R. Chapter I, Subchapter D., Part 67.  The statutory authority for these regulations is 49 U.S.C. §§ 106(g), 40113, 44701–44703, 44707, 44709–44711, 45102–45103, 45301–45303.  See, e.g., 14 C.F.R. § 67.1.  The only one of those statutes that expressly addresses "foreign air carriers" is 49 U.S.C. § 45102, governing alcohol and controlled substances testing programs.  See 49 U.S.C. § 45102(a).[3]

---

[3] Section 45102(2) states, *inter alia*:
> the Administrator of the Federal Aviation Administration shall prescribe regulations that establish a program requiring air carriers and foreign air carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of airmen, crew members, airport security screening personnel, and other air carrier employees responsible for safety-sensitive functions (as decided by the Administrator) for the use of a controlled substance in violation of law or a United States Government regulation; and to conduct reasonable suspicion, random, and post-accident testing of airmen, crew members, airport security screening personnel, and other air carrier employees responsible for safety-sensitive functions (as decided by the Administrator) for the use of alcohol in violation
> (continued...)

14

Ventress essentially asks the Court to conclude that the medical regulations enacted pursuant to the FAA do not have preclusive effect as to foreign air carriers because, except for the statute addressing controlled substance testing, the statutes authorizing the medical regulations refer only to "air carriers" and not to "foreign air carriers". Insofar as the Ninth Circuit has held that the term "air carriers" is ambiguous in the FAA, this Court must look to the context that the term appears in to interpret the meaning of "air carriers" as used the statutes at issue in this case. For example, 49 U.S.C. § 44701(a) states that "[t]he Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce . . . ." Section 44711(a) states, in pertinent part:

> A person may not--
> . . . .
> (2) serve in any capacity as an airman with respect to a civil aircraft, aircraft engine, propeller, or appliance used, or intended for use, in air commerce--
> (A) without an airman certificate authorizing the airman to serve in the capacity for which the certificate was issued; or
> (B) in violation of a term of the certificate or a regulation prescribed or order issued under section 44701(a) or (b) or any of sections 44702-44716 of this title[.]

49 U.S.C. § 44711(a). As previously noted, the term "air

---

³(...continued)
 of law or a United States Government regulation.

commerce" includes the commercial airlines transporting passengers between the United States and international destinations.  49 U.S.C. § 40102(a)(22).

Based on the pleadings, it is clear that, during the period at issue in this case, JAL was engaged in air commerce. [Complaint at ¶ 14 (discussing JAL flight from Honolulu, Hawaii to Hiroshima, Japan); CV 03-00451,[4] Japan Airlines and JALways Co., Ltd.'s Answer to Complaint ("Answer"), filed 9/9/03 (dkt. no. 26), at ¶ 11 (admitting that Ventress "was acting as Flight Engineer on Defendant JALways flight number JO095 from Honolulu, Hawaii to Hiroshima, Japan with a continuation to Osaka Japan").] Thus, provisions such as § 44711(a) apply to JAL and interpreting the term "air carrier" to have "its broader and ordinary meaning" encompassing domestic air carriers and foreign air carriers would be consistent with the application of provisions such as § 44711(a).  See Korean Air, 642 F.3d at 693.

Further, interpreting the term "air carrier" in such a way as to eliminate the preclusive effect of federal medical standards for airmen as to foreign air carriers would be inconsistent with the extensive federal occupation of that area and would lead to absurd results.  Cf. Korean Air, 642 F.3d at

---

[4] The Complaint, filed on August 20, 2003 and assigned CV 03-00451 SPK-LEK, contains Ventress's claims as well as claims by Jack Crawford.  Ventress's claims were subsequently severed from Crawford's.

16

693 n.6 ("We decline to apply a general presumption against preemption here because the ADA preemption provision involves preclusion of state regulation in 'an area where there has been a history of significant federal presence,' namely navigable airspace." (citing United States v. Locke, 529 U.S. 89, 108, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000); Skysign Int'l, Inc. v. City & Cnty. of Honolulu, 276 F.3d 1109, 1115-16 (9th Cir. 2002))).

In a case addressing ADA preemption, the Eastern District of New York stated:

> Finally, it bears noting that excluding foreign air carriers from the scope of ADA preemption would result in anomalous rulings. "A statute should be interpreted in a way that avoids absurd results.'" (sic) United States v. Venturella, 391 F.3d 120, 126 (2d Cir. 2004) (citations omitted); see also Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333 (1938). One such result here would be that while domestic airlines would be subject solely to federal laws, foreign airlines, obliged to follow both federal and state regulations, would be subject to an arbitrary quilt of inconsistent regulations, requirements, and restrictions across the fifty states. In addition, it is highly unlikely that Congress intended to allow states to impose different standards upon foreign air carriers than domestic airlines in violation of the United States' obligation under various treaties to secure equal treatment of domestic and foreign airlines. See, e.g., Convention on International Civil Aviation art. 11, Dec. 7, 1944, 61 Stat. 1180, TIAS 1591, 15 U.N.T.S 295 (providing for application of laws and regulations "without distinction as to nationality" of signatory state's aircraft); Treaty of Friendship, Commerce and Navigation, U.S.-Japan, arts. V, VII, XXII, Apr. 2, 1953, 4 U.S.T.2063, 2068, 2069 (providing that the United States and Japan will ensure that each other's companies, inter alia, will be

> treated in terms "no less favorable" than treatment accorded to their own companies). Accordingly, applying ADA preemption to both foreign and domestic airlines avoids an otherwise absurd result.

In re Air Cargo Shipping Servs. Antitrust Litig., No. MD 06-1775(JG)(VVP), 2008 WL 5958061, at *23 (E.D.N.Y. Sept. 26, 2008) (footnote omitted). Interpreting the term "air carriers" to include both domestic air carriers and foreign air carriers is the more reasonable interpretation of the term "air carriers" as used in the FAA provisions authorizing the federal regulations governing medical standards for airmen.

For these reasons, the Court rejects Ventress's argument that the FAA does not apply to JAL because it is a foreign air carrier. Ventress has not established any grounds for this Court to reconsider the 10/31/11 Order.

## CONCLUSION

On the basis of the foregoing, Ventress's Motion for Reconsideration, filed on November 10, 2011, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 27, 2011.



 /S/ Leslie E. Kobayashi
 Leslie E. Kobayashi
 United States District Judge

**MARTIN VENTRESS V. JAPAN AIRLINES, ET AL; CIVIL NO. 07-00581 LEK-RLP; ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**